**UNIFIED SCHOOL DISTRICT NO. 259, Plaintiff,**

v.

**Jeff NEWTON and Diane Newton, Parents of Alissa Newton, Defendants.**

Civ. A. No. 87–1027–T.

United States District Court, D. Kansas.

Nov. 2, 1987.

Kathy Babcock, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for plaintiff.

Jim Lawing, Wichita, Kan., for defendants.

**OPINION AND ORDER**

THEIS, Senior District Judge.

This matter comes before the court on cross-motions for judgment on stipulated facts. The single issue for resolution is the availability of attorneys' fees for work done by counsel for defendants Jeff Newton and Diane Newton, the parents of Alissa Newton ("the Newtons"), the prevailing

party at a local-level due process hearing under the Education of the Handicapped Act (EHA). 20 U.S.C. § 1401, *et seq.* As explained below, the court grants the Newtons' motion for attorneys' fees based on the language and legislative history of 20 U.S.C. § 1415(e)(4)(B).

The parties stipulated to the following facts. Jeff and Diane Newton requested that U.S.D. No. 259 ("the District") provide Alissa Newton with the related services of occupational therapy and physical therapy. The District denied the request. A special education due process hearing was held on May 27 and 29, 1986, pursuant to K.S.A. § 72-972 and 20 U.S.C. § 1415(b)(2). The hearing officer ruled on June 9, 1986, that the District must provide physical and occupational therapy for Alissa. Neither party appealed the decision and it became final on or about June 20, 1986.

On August 5, 1986, Congress enacted the Handicapped Children's Protection Act of 1986 (HCPA), which authorizes federal courts to to award reasonable attorneys' fees to the prevailing party in "actions or proceedings" under the EHA commenced after *July 3, 1984.* Pub.L. No. 99–372, 100 Stat 796 [amending 20 U.S.C. § 1415(e)]. The District does not contest the reasonableness of the Newtons' fee request or that they were the prevailing party. The parties dispute whether 20 U.S.C. § 1415(e)(4)(B) authorizes an award of attorneys' fees for work done *solely* at the administrative level, or if fees are available to a parent only after exhausting the state administrative process *and* filing suit in federal court contesting the adverse state rulings.

## I. THE STATUTORY LANGUAGE

The court's inquiry begins with the language of 20 U.S.C. § 1415:

(e)(1) A decision made in a hearing conducted pursuant to paragraph (2) of subsection (b) of this section [local level due process hearing] shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (c) [state administrative appeal] and paragraph (2) of this

subsection [federal civil action]. A decision made under subsection (c) of this section shall be final except that any party may bring an action under paragraph (2) of this subsection.

(2) Any party aggrieved by the findings and decision made under subsection (b) who does not have the right to an appeal under subsection (c), and any party aggrieved by the findings and decision under subsection (c), shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy....

(3) During the pendency of any *proceedings* conducted pursuant to this section,....

\*    \*    \*    \*    \*    \*

(4)(B) *In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party.*

\*    \*    \*    \*    \*    \*

(D) No award of attorneys' fees and related costs may be made in any action or proceeding under this subsection for services performed subsequent to the time of a written offer of settlement to a parent or guardian if—

(i) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, *in the case of an administrative proceeding,* at any time more than ten days before the *proceeding* begins;

(ii) the offer is not accepted within ten days; and

(iii) the court or administrative officer finds that the relief finally obtained by the parents or guardian is not more favorable to the parents or guardian than the offer of settlement.

(E) Notwithstanding the provisions of subparagraph (D), an award of attor-

neys' fees and related costs may be made to a parent or guardian who is the prevailing party and who was substantially justified in rejecting the settlement offer. 20 U.S.C. § 1415 (emphasis supplied).

The District contends that an "action or proceeding under this subsection" in § 1415(e)(4)(B) is limited to federal civil suits filed to resolve the merits of the controversy under § 1415(e)(2), not federal actions filed solely to recover fees for time expended at the state administrative level. The District's primary reliance for its interpretation is the arguably limiting language, "under this subsection." "Subsection" refers to (e), the District insists, and the only suit authorized in subsection (e) is the subparagraph (e)(2) federal suit on the merits of the controversy. The language and structure of § 1415(e) do not dictate the narrow reading of the provision advanced by the District.

First, the term "action or proceeding" may include administrative hearings and appeals. "Proceeding" is not defined in the statute and its use in § 1415(e) does not mandate the District's interpretation. Section 1415(e)(3) appears to use "proceeding" in the generic sense of both state administrative proceedings and federal civil actions. Section 1415(e)(4)(D)(i) links "proceeding" with "administrative." By connecting the two words later in the statute, the drafters supplied an explanation for "proceeding": the state administrative hearing and appeal that must be exhausted before filing suit in federal court. Under the District's construction, "proceeding" is redundant, effectively a nullity, if the whole phrase "action or proceeding" refers only to a federal civil suit. The court doubts Congress wrote section (e)(4)(B) in the disjunctive to refer to only federal civil suits under subparagraph (e)(2).

Second, other provisions of the statute provide additional evidence that Congress wished to compensate attorneys for time spent at the administrative level. Under section 1415(e)(4)(D), a court will not grant attorneys' fees if the parent refused a settlement offer ultimately better than the relief obtained in state administrative pro-

ceedings or in federal court. Subparagraph (D)(i) explicitly differentiates between offers made after a federal civil action was filed and those made "in the case of an administrative proceeding." Subparagraph (D)(iii) authorizes an "administrative officer" to find that the relief obtained by the parent is not more favorable than the settlement offer. "A finding by an administrative officer that the parents obtained a better final result implies that the parents prevailed at the administrative level." *Michael F. v. Cambridge School Dept.*, 1986–87 E.H.L.R. (Education Handicapped Law Reporter) Dec. 558:270, 271 (D.Mass.1987) [Available on WESTLAW, 1987 WL 7752]. *Accord School Bd. of Prince William County v. Malone*, 662 F.Supp. 999, 1001 (E.D.Va.1987) ("These references [to administrative officers in (e)(4)(D) ] would be meaningless if only civil actions in court were the subject of the amendment.") Section 1415(e)(4)(E) allows the federal court to award attorneys' fees, notwithstanding a parent's rejection of a better settlement offer under subparagraph (D), if the parent "was substantially justified in rejecting the settlement offer." The reference to subparagraph (D) reinforces the implication that a prevailing party at the state administrative level is entitled to sue for attorneys' fees under § 1415(e)(4)(B).

■ Third, the limiting language, "under this section," of subparagraph (e)(4)(B) is not as restrictive as the District asserts. "Section," the District correctly notes, applies to § 1415(e). In addition to conferring jurisdiction for a federal action in (e)(2), the section also describes two state proceedings—a due process hearing and an administrative appeal—*in (e)(1)*. Thus, an "action or proceeding under this section" could refer to the state administrative proceedings described in (e)(1). *Prescott v. Palos Verdes Peninsula Unified School District*, 659 F.Supp. 921, 923 (C.D.Cal. 1987). In short, a plain reading of the statute and its structure does not compel the interpretation advanced by the District. The legislative history of the provision, though, amply demonstrates that attor-

neys' fees for work at the administrative level *are recoverable* in a separate action in federal court.

## II. THE LEGISLATIVE HISTORY OF THE HCPA

Congress passed the HCPA in August 1986 to overturn the effect of *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). In *Smith,* the Supreme Court held that the EHA provided the exclusive source of rights and remedies for special education cases. *Smith* precluded "parents from bringing special education cases under section 504 of the Rehabilitation Act of 1973, and recovering attorney's fees available under section 505 of that act, where relief was available under the EHA." S.Rep. No. 112, 99th Cong., 1st Sess. 2, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1798, 1799 [hereinafter "Senate Report"]. Congress quickly sought to correct the Court and make clear its intent to allow the recovery of attorneys' fees under the EHA. *Id.*

Both the Senate and the House unambiguously expressed their understanding that the attorneys' fee provision of the HCPA encompassed fees for administrative proceedings. The Senate considered the matter first on July 30, 1985. Senator Simon stated: "I would like to discuss two major aspects of this bill: the inclusion of the right to reimbursement for fees incurred during the administrative process; ...." 131 Cong.Rec. S10,400. Simon supported fees at the administrative level on policy reasons. "For minority group parents, for low-income as well as moderate income parents, the right to obtain reimbursement for assistance they may need at the administrative level is critically important to assure fair and equal access to the formal procedures mandated by Congress...." *Id. See also id.* at S10,398 (1985) (remarks of Sens. Weicker and Stafford).

The House debate in November 1985 also evinces Congress' intent to provide attorneys' fees for work done solely at the administrative level. Proponents of the HCPA championed the fees at the administrative level provision. 131 Cong.Rec. H9,966 (remarks of Rep. Williams) ("First, it [the HCPA] amends part B of EHA to provide that a parent or guardian of a handicapped child who prevails against a school district or a state education agency in a Federal or State court, *or an administrative proceeding such as a due process hearing or a State appeal,* may be awarded reasonable attorneys' fees, costs, and expenses by the court." [emphasis added]); 131 Cong.Rec. H9,969 (remarks of Rep. Biaggi) ("The part of the bill that the gentleman from Texas says is flawed [Rep. Bartlett's complaints about the availability of attorneys' fees at the administrative level] *I regard as its strength.*" [emphasis added]) Finally, the floor manager, Representative Williams, defined the *two* terms "action" and "proceeding":

> The term "action" is intended to include a civil action filed in a State or Federal court. The term "proceeding" is limited to the due process hearing that parents are required to exhaust under 615(b)(2) and the State appeal under section 615(c).

131 Cong.Rec. H9,968 (1985).

Opponents of the bill based their position on the authorization of fees at the administrative level. 131 Cong.Rec. H9,967 (remarks of Rep. Bartlett) ("H.R. 1523 mistakenly extends the authority for the recovery of attorneys' fees into Public Law 94–142's administrative hearing process."); *Id.* at H9,971 (remarks of Rep. Jeffords) ("By providing for attorneys' fees at the administrative level, I am concerned that we will be reversing our original intent and interfering with a procedure that is working."). Opponents of the HCPA were mollified by a sunset clause on attorneys' fees for work at the administrative level in the bill. *Id.* at H9,968–71 (remarks of Reps. Bartlett and Jeffords). The sunset clause would have amended "action and proceeding" of § 1415(e)(4)(B) to "civil action" after four years. H.R. 1523, § 6, 99th Cong., 1st Sess., *reprinted in* 131 Cong.Rec. H9,965 (1985). The House passed H.R. 1523, but the House–Senate Conference Committee eliminated the sunset clause. H.Conf.Rep. No. 687, 99th Cong., 2d Sess. 5, *reprinted in* 1986 U.S.Code Cong. & Admin.News, 1807, 1808.

The conference committee resolved minor differences between the two bills but did not alter the language of the section at issue. *Id.* Opponents of attorneys' fees at the administrative level renewed their objections to the legislation in the final debate. 132 Cong.Rec. H4,842, 4,844 (remarks of Reps. Bartlett and Biaggi). The floor debates in both chambers unequivocally support the Newtons' position that attorneys' fees are available for work at the administrative level.

The report accompanying the Senate version of the HCPA is an additional demonstration of legislative intent for allowing fees at the administrative level. The report's section-by-section analysis explains that the HCPA would provide "for the award of reasonable attorney's fees to prevailing parents in EHA civil actions and in administrative proceedings...." Senate Report, *supra* p. 421, at 1800. "The committee intends that S. 415 will allow the Court, but not the hearing officer, to award fees for time spent by counsel in mandatory EHA administrative proceedings." *Id.* at 1804. The report also expressed the committee's intention that courts interpret the HCPA fee provision consistently with the attorneys' fees provision of Title VII of the Civil Rights Act of 1964. *Id.* The Supreme Court in *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 62–63, 100 S.Ct. 2024, 2030–2031, 64 L.Ed.2d 723 (1980), allowed attorneys' fees for work done at the administrative level based on a similar fee provision contained in Title VII, 42 U.S.C. § 2000e-5(k). In short, in floor debates over two years and in various legislative reports, both houses of Congress unambiguously assented to attorneys' fees for work done solely at the administrative level.

### III. CREST STREET AND THE HCPA

The District argues that reliance on the legislative history of the HCPA is undercut by *North Carolina Dept. of Transportation v. Crest Street Community Council, Inc.,* 479 U.S. ——, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986). The *Crest Street* Court refused to allow attorneys' fees under 42 U.S.C. § 1988 for work done solely in administrative proceedings pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d-1. Section 1988 allows a court to award attorneys' fees to the prevailing party "[i]n any action or proceeding to enforce a provision of" various civil rights statutes. 42 U.S.C. § 1988. The Court rested its conclusion on the "plain language" of the statute and its legislative history. The floor debates and legislative reports repeatedly referred to "'the enforcement of the civil rights statutes "in suits," "through the courts," and by "judicial process."'" *Crest Street,* 479 U.S. at ——, 107 S.Ct. at 340 (citations omitted). The Court concluded that "(t)he legislative history clearly envisions that attorney's fees would be awarded for proceedings only when those proceedings are part of or followed by a lawsuit." *Id.* at ——, 107 S.Ct. at 341.

The District's contention that section 1415(e)(4)(B) does not authorize awarding fees to the Newtons hinges on the *Crest Street* Court's disavowal of dicta in *New York Gaslight Co., Inc. v. Carey,* 447 U.S. 54, 65–66, 100 S.Ct. 2024, 2031–2032, 64 L.Ed.2d 723 (1980), which the Senate Report and the legislative debates on the HCPA cited approvingly. 479 U.S. at ——, 107 S.Ct. at 341. The *Carey* dicta found it anomalous that a court would not award attorney fees if a case was resolved at the administrative level but would award fees if the case advanced the next step to federal court. 447 U.S. at 65–66, 100 S.Ct. at 2031–2032. The *Crest Street* Court found that the plain language and legislative history of 42 U.S.C. § 1988 mandated this scheme and that Congress could reasonably draft an attorneys' fees statute limited to federal civil actions. 479 U.S. at ——, 107 S.Ct. at 341. The District asks this court to imply from *Crest Street* a disapproval of all statutes granting attorneys' fees for work done at the administrative level.

The court rejects this leap of logic. Unlike § 1988 at issue in *Crest Street,* the HCPA fees provision and legislative history clearly provide for attorneys' fees at the administrative level. As discussed above, the meaning of "action or proceeding under

this section" in 20 U.S.C. § 1415(e)(4)(B) is clarified by reference to other parts of section (e). "[P]roceeding" is linked to administrative proceedings in the discussion of legitimately refusing settlement offers in 20 U.S.C. § 1415(e)(4)(D) and (E). "[T]his section" refers to administrative due process hearings and state appeals in 20 U.S.C. § 1415(e)(1). Moreover, the legislative history illuminates any ambiguity in the statutory language by the repeated and express statements by both proponents and opponents of the HCPA authorizing attorneys' fees for work done at the administrative level. *Prescott*, 659 F.Supp. at 924 n. 3; *Michael F.*, E.H.L.R.Dec. No. 558: at 271–72.

An equally unpersuasive argument, not advanced by the District, also involves *Crest Street, Carey* and the legislative history of the HCPA. The legislative history of the HCPA contains several references to Congress' desire to pattern the HCPA attorneys' fees provision after those found in civil rights statutes and to interpret the HCPA as the *Carey* court interpreted the attorneys' fees provision of Title VII. *See Rollison v. Biggs*, 660 F.Supp. 875, 877 (D.Del.1987) (citing Senate Report, *supra* p. 421, at 1804; 131 Cong.Rec. H9,972 [remarks of Rep. Williams]). The *Rollison* court concluded that "[b]ecause Congress intended that the HCPA be construed consistent with other fee-shifting statutes, the rule of *Crest Street* applies in special education cases brought under the EHCA just as the rule applies in other civil rights cases." *Id.*

This court is not persuaded that Congress desired courts to interpret the HCPA fee provision consistent with other civil rights fee provisions, *if* those statutes did not allow for attorneys' fees at the administrative level. The references in the legislative history to attorneys' fees for work done solely at the administrative level are numerous and unambiguous. 131 Cong. Rec. S10,398, 10,400 (1985) (remarks of Sens. Weicker and Simon); 131 Cong.Rec. H9,966–72 (1985) (remarks of Reps. Williams, Bartlett, Biaggi and Jeffords); 132 Cong.Rec. H4,842–44 (remarks of Reps. Bartlett, Biaggi and Jeffords) (1986); Sen-

ate Report, *supra* p. 421, at 1800, 1804. The three references to consistent interpretation among fee statutes cited by the *Rollison* court are simply insufficient in scope, detail or context to vitiate the import of the multitude of other passages discussing attorneys' fees at the administrative level. This court will not disregard congressional intent.

All courts except *Rollison* have found that § 1415(e)(4)(B) does authorize attorneys' fees for work at the administrative level. *Kristie W. v. Graham Independent School Dist.*, 663 F.Supp. 86, 88 (N.D.Tex. 1987); *Dodds v. Simpson*, 676 F.Supp. 1045 (D.Or.1987); *Malone*, 662 F.Supp. at 1001; *Burpee v. Manchester School Dist.*, 661 F.Supp. 731, 732 (D.N.H.1987); *Prescott*, 659 F.Supp. at 924–25. This court joins the weight of judicial authority.

## IV. SECTION 1415(e)(4)(B) IS CONSTITUTIONAL

The District's final argument is that Congress exceeded the scope of the spending power under Art. I, § 8 of the Constitution by authorizing retroactive fee awards. The District claims that the retroactive attorneys' fees provision violates the terms and conditions of the quasi-contract that exists under federal-state funding statutes like the EHA. *See Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981) ("[L]egislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States may agree to comply with the federally imposed conditions.") The spending power argument by the District misconstrues the question decided by the *Pennhurst* Court and fails to recognize Congress' concurrent power under the fourteenth amendment for enacting the EHA.

██ Federal-state funding statutes enacted under Congress' fourteenth amendment powers do not implicate the quasi-contractual relationship of spending power statutes. *Pennhurst*, 451 U.S. at 17, 101

**424**

S.Ct. at 1539. Congress enacts a statute under the fourteenth amendment to ensure citizens' constitutional rights. The EHA is grounded in the fourteenth amendment. A senate committee recognized that the then-proposed EHA stemmed from the "States' primary responsibility to uphold the Constitution of the United States and their own State Constitutions and State laws *as well as Congress' own responsibility under the 14th Amendment to assure equal protection of the law.*" Senate Report No. 168, 94th Cong., 2d Sess. 22, *reprinted in* 1975 U.S.Code Cong. & Admin.News 1425, 1446 (emphasis added). A Congressional finding further illustrates the EHA's fourteenth amendment underpinnings: "It is in the national interest that the Federal Government assist State and local efforts to provide programs to meet the educational needs of the handicapped children in order to assure *equal protection of the law.*" 20 U.S.C. § 1400(b)(9) (emphasis added). The legislative history and statutory language demonstrate that Congress exercised its fourteenth amendment powers in passing the EHA. *Yaris v. Special School Dist. of St. Louis Co.,* 661 F.Supp. 996, 1001 (E.D.Mo.1987) (citations omitted); *Counsel v. Dow,* 666 F.Supp. 366, 368 n. 2 (D.Conn.1987).

■ Economic and social welfare legislation enacted under the fourteenth amendment is reviewed under the rational basis test, even if applied retroactively:

[T]he strong deference accorded legislation in the field of national economic policy is no less applicable when that legislation is applied retroactively. Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by a rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches....

*Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984) [*citing Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15–16, 96 S.Ct. 2882, 2892–2893, 49 L.Ed.2d 752 (1976) ].

■ A legitimate and rational legislative purpose did exist for the retroactive provision. Prior to the *Smith* decision which overturned the awarding of attorneys' fees under the EHA, *see* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), Congress thought attorneys' fees were available. Senate Report, *supra* p. 421, at 1799. Congress did not want the incorrect interpretation of *Smith* to deprive any child of an appropriate education because of the failure to secure counsel. To advance this goal, Congress recognized the need to completely erase the effects of *Smith* by making the HCPA fee provision retroactive to the date *Smith* was decided. *See* Senate Report, *supra* p. 421, at 1803, 1805; 131 Cong.Rec. H9,966–67, 9,969, 9,971 (1985) (remarks of Reps. Bartlett, Biaggi, Jeffords and Williams); 131 Cong.Rec. S10,-397–98, S10,400 (1985) (remarks of Sens. Weicker and Simon). Under a deferential standard of review, the HCPA is a valid exercise of Congress' fourteenth amendment powers.

Even without a fourteenth amendment basis for the HCPA, 20 U.S.C. § 1415(e) does not violate *Pennhurst.* First, the most favorable language for the District in *Pennhurst,* "[t]hough Congress' power to legislate under the spending power is broad, it does not include surprising participating States with post acceptance or retroactive conditions," is mere dicta. 451 U.S. at 25, 101 S.Ct. at 1544. The only issue the Court decided in *Pennhurst* was one of statutory interpretation, whether 42 U.S.C. § 6010 gave mentally handicapped patients rights to certain types of treatment. The other issues, including the scope of Congress' power under the spending power or the fourteenth amendment, were specifically reserved. *Pennhurst,* 451 U.S. at 10–11, 17 n. 13, 101 S.Ct. at 1536, 1540 n. 13. Furthermore, the dispute in *Pennhurst* did not involve retroactive legislation. The language in *Pennhurst* on retroactive conditions violating the "contract" implicit in federal-state funding statutes is not binding and inapplicable. *Yaris,* 661 F.Supp. at 1001.

Second, the applicable and oft-stated rule of statutory interpretation from *Pennhurst* is that "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." 451 U.S. at 17, 101 S.Ct. at 1540. The legislative history of the HCPA reveals that Congress explicitly authorized retroactive attorneys' fees at the administrative level in the HCPA. The legislative intent requirement of *Pennhurst* is satisfied.

 Third, the retroactive grant of the attorneys' fees provision does not violate the broad parameters of the spending power. Although the spending power issue was not before the Court in *Pennhurst*, the Court cryptically noted the three leading cases on the question: *Steward Machine Co. v. Davis*, 301 U.S. 548, 585, 57 S.Ct. 883, 890, 81 L.Ed. 1279 (1937); *Lau v. Nichols*, 414 U.S. 563, 569, 94 S.Ct. 786, 789, 39 L.Ed.2d 1 (1974); *Fullilove v. Klutznick*, 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980). *Pennhurst*, 451 U.S. at 17 n. 13, 101 S.Ct. at 1540 n. 13. The Court found in none of the three cases that Congress breached the spending power limitation. The outer limits of the spending power are not definite. This court concurs with the conclusion of two other courts that the HCPA does not violate the spending power. *Malone*, 662 F.Supp. at 1001 n. 1; *Yaris*, 661 F.Supp. at 1001.

Three district courts have entertained several other constitutional challenges to the retroactive fee provision of the HCPA and summarily rejected all of them. *Malone*, 662 F.Supp. at 1001 (separation of powers); *Yaris*, 661 F.Supp. at 1001–02 (eleventh amendment); *Clovis Unified School Dist. v. California Ofc. of Adm. Hearings*, 1986–87 E.H.L.R.Dec. 558:362, 363 (contract clause). This court concludes that the HCPA is not constitutionally flawed.

In conclusion, 20 U.S.C. § 1415(e)(4)(B) authorizes federal courts to award attorneys' fees to the prevailing party for work done solely at the administrative level. The statutory language indicates and the legislative history amply demonstrates that

Congress recognized and explicitly approved of awarding attorney fees to parents prevailing after the administrative hearing. Finally, the retroactive attorneys' fees provision offends no part of the constitution.

**IT IS BY THE COURT THEREFORE ORDERED** that the District's motion for judgment on stipulated facts is hereby denied. **IT IS FURTHER ORDERED** that the Newtons' motion for judgment on stipulated facts is hereby granted. **IT IS FURTHER ORDERED** that the District pay the Newtons' counsel, Jim Lawing, fees in the amount of Two Thousand Three Hundred Eighty–One and 25/100 Dollars ($2,381.25).